JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

KKB Enterprises, LLC, Kevin M. Burton, Kaitlyn P. Burton

**(b)** County of Residence of First Listed Plaintiff **Washtenaw**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Jan J. Rubinstein (P57937) 30665 Northwestern Hwy., Ste. 165, Farmington Hills, MI 48334

## DEFENDANTS

Salem Township, Gary Whittaker, John Enos, Paul Montagno

County of Residence of First Listed Defendant **Washtenaw**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability   ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel &   Pharmaceutical   Slander   Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability   ☐ 368 Asbestos Personal   ☐ 340 Marine   Injury Product | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product   Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | Liability   **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | Product Liability   ☐ 380 Other Personal | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | ☐ 360 Other Personal   Property Damage   Injury   ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| | ☐ 362 Personal Injury -   Product Liability   Medical Malpractice | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights   **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate | | **FEDERAL TAX SUITS** | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/   Sentence   Accommodations   ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 290 All Other Real Property | Employment   **Other:**   ☐ 446 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | **IMMIGRATION** | | Agency Decision |
| | Other   ☐ 550 Civil Rights   ☐ 448 Education   ☐ 555 Prison Condition | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| |   ☐ 560 Civil Detainee -   Conditions of   Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983

Brief description of cause:
First Amendment, Due Process Violations

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** TBD

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE 07/31/2026

SIGNATURE OF ATTORNEY OF RECORD /s/ Kevin M. Burton (P86626)

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III. Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV. Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V. Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI. Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII. Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.**  This section of the JS 44 is used to reference related cases, if any.  If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| KKB ENTERPRISES, LLC, a Michigan limited liability company, KEVIN M. BURTON, an individual, and KAITLYN BURTON, an individual, | Case No.: 2:26-cv-_____ <br><br> Honorable: _____ <br><br> Magistrate Judge: _____ |

Plaintiffs,

-v-

SALEM TOWNSHIP, a Michigan municipal corporation; GARY WHITTAKER, an individual; PAUL MONTAGNO, an individual; and JOHN ENOS, an individual,

Defendants.

_____

**THE RUBINSTEIN LAW FIRM**
Jan Jeffrey Rubinstein (P57937)
Kevin M. Burton (P86626)
*Attorneys for Plaintiffs*
30665 Northwestern Highway, Suite 165
Farmington Hills, Michigan 48334
(248) 220-1415
jjr@therubinsteinfirm.com
kb@therubinsteinfirm.com

_____

There is no other pending or resolved federal civil action arising out of the same transaction or occurrence alleged in this Complaint.

## VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE, MONETARY RELIEF AND JURY DEMAND

NOW COME Plaintiffs KKB ENTERPRISES, LLC ("KKB"), KEVIN M. BURTON ("Kevin"), and KAITLYN BURTON ("Kaitlyn") (collectively, "Plaintiffs"), by and through counsel, and state the following against Defendants SALEM TOWNSHIP (the "Township"), GARY WHITTAKER ("Gary"), PAUL MONTAGNO ("Montagno"), and JOHN ENOS ("Enos") (collectively, "Defendants"):

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

## PRELIMINARY STATEMENT

1.  This civil-rights action concerns the retaliatory obstruction of a zoning-compliance application and the Township's subsequent, immediate revocation of a zoning and municipal approval that it had issued to KKB in 2022 for a Michigan Class W automotive wholesaler home occupation at 9884 Currie Road, Northville, Michigan 48167 (the "Property").

2.  The Township granted the 2022 approval after Plaintiffs expressly disclosed that KKB would buy, clean, detail, and sell classic, antique, and collector vehicles; that vehicle transactions would occur offsite; that the business would not be open to the public; and that office work and limited vehicle work would occur inside an existing garage.

3.  The Township signed both the zoning and municipal approval forms required by the Michigan Department of State and issued a written approval letter confirming those limits.

4.  Plaintiffs then operated for years without any adjudicated zoning violation. In 2024, one anonymous complaint led the Township to object to vehicles being kept outdoors while Plaintiffs were replacing the roof of an existing detached garage.

5.  After the Township located its own 2022 approval, it instructed Plaintiffs that dealer-related vehicles must be kept indoors. Plaintiffs complied. No citation, hearing, civil-infraction adjudication, fine, or subsequent written violation determination followed.

6.  In spring 2026, Gary's son, nonparty Travis Whittaker ("Travis"), who was associated with the church parcel adjoining the Property, asked Plaintiffs for an easement or other permission to direct stormwater from a proposed church parking-lot expansion toward a pond at the rear of Plaintiffs' Property. The proposed drainage route conflicted with the area selected for Plaintiffs' planned 50-foot by 96-foot barn. Plaintiffs did not grant the requested drainage rights.

7.  At approximately the same time, Plaintiffs applied for approval of the barn. Although the structure complied with the dimensional and lot-coverage standards identified by Plaintiffs, Defendants delayed and rejected the application through a succession of changing rationales:

first that the barn looked "commercial"; then that it exceeded the home-occupation floor-area limitation; then that unspecified "several complaints[1]" showed frequent transporter activity; then that any regular transporter delivery was forbidden in a "residential neighborhood"; and finally that the approved business was not actually a classic-car restoration home occupation at all.

8. Plaintiffs repeatedly revised their plans and narratives at the direction of Montagno and Gary. Plaintiffs limited the business area to no more than twenty-five percent of the dwelling floor area; separated the flower-farm, personal-vehicle, and business spaces; eliminated any public-facing use; limited vehicle restoration to low-intensity work; committed to offsite major repairs and offsite sales; and offered restrictive operating conditions.

9. The Township's own Freedom of Information Act production, however, contained no written complaints about transporters or vehicle off-loading and identified only the single anonymous 2024 complaint described above.

10. On July 16, 2026, after nearly four months of delay and after Montagno had indicated multiple times that he was inclined to approve the revised proposal during recorded calls, Kevin sent a written demand for a decision and stated that Plaintiffs would file suit if the matter was not resolved by the end of the month.

11. On July 30, 2026, Enos issued a letter[2] in the Township's name purporting to immediately revoke KKB's 2022 zoning-compliance and municipal approvals, directing KKB to cease operations, and threatening enforcement. The letter cited no hearing, no adjudicated violation, no new inspection report, and no ordinance provision authorizing immediate revocation.

12. The timing, the unsupported complaint narrative, the conflict between the revocation rationale and Plaintiffs' original disclosures, the serially changing permit rationales, and Gary's familial and private interest in the adjacent drainage proposal support a reasonable inference that

---

[1] Which were never brought to Plaintiffs' Attention Prior to the Pole Barn Application.
[2] Dated July 22, 2026

Defendants used municipal zoning power to punish Plaintiffs for opposing the drainage request and for exercising their rights to petition, criticize, obtain public records, appeal, and seek judicial relief.

13. Plaintiffs seek restoration of the pre-revocation status quo, a constitutionally adequate and impartial process, protection against further retaliation, lawful review of the barn application under objective ordinance standards, and damage caused by Defendants' conduct.

## JURISDICTION AND VENUE

14. This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

15. This Court has supplemental jurisdiction over Plaintiffs' related Michigan-law claims under 28 U.S.C. § 1367(a) because those claims arise from the same case or controversy as the federal claims.

16. This Court may grant declaratory and further relief under 28 U.S.C. §§ 2201 and 2202 and preliminary and permanent injunctive relief under Federal Rule of Civil Procedure 65.

17. Venue is proper under 28 U.S.C. § 1391(b) because all material events occurred in Washtenaw County, Michigan, the Property is located there, and the Township and individual public Defendants performed the challenged official acts there. Washtenaw County lies within the Southern Division of this District.

18. Plaintiffs demand a trial by jury on all issues so triable as of right under Federal Rule of Civil Procedure 38.

## PARTIES

19. Plaintiff KKB Enterprises, LLC is a Michigan limited liability company with its principal place of business at 9884 Currie Road, Northville, Michigan 48167.

20. Plaintiff Kevin M. Burton is an adult resident of Washtenaw County, Michigan, residing at the Property. Kevin is an owner of the Property, an owner and authorized representative of KKB, and the person who principally communicated with the Township on Plaintiffs' behalf.

21. Plaintiff Kaitlyn Burton is an adult resident of Washtenaw County, Michigan, residing at the Property. Kaitlyn is an owner of the Property, an owner and/or authorized representative of KKB, and the operator of the approved flower-farm[3] use on the Property.

22. Defendant Salem Township is a Michigan municipal corporation and political subdivision located in Washtenaw County. It acted through its elected Supervisor, retained planning and zoning consultants, building and zoning personnel, and other agents.

23. Defendant Gary Whittaker is the elected Supervisor of Salem Township. At all relevant times, he acted under color of state law and, upon information and belief, directed, influenced, approved, or participated in the challenged zoning decisions. He is sued in his individual capacity for damages and, to the extent necessary, in his official capacity solely for prospective equitable relief.

24. Defendant Paul Montagno is a planner and Principal with Carlisle/Wortman Associates, Inc. During the barn review, the Township held him out as its Zoning Administrator, and he exercised governmental zoning authority on the Township's behalf. At all relevant times, he acted under color of state law and is sued in his individual capacity for damages and, if necessary, his official capacity solely for prospective equitable relief.

25. Defendant John Enos is a planner with Carlisle/Wortman Associates, Inc. On July 22, 2026, he acted and signed as the Township's "Planning and Zoning Administrator" when he purported to revoke KKB's existing zoning and municipal approvals. At all relevant times, he acted under color of state law and is sued in his individual capacity for damages and, if necessary, his official capacity solely for prospective equitable relief.

---

[3] Non-Party Golden Hour Flower Farm, LLC

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

26. At relevant times, Montagno and Enos performed the traditional and exclusively governmental function of administering and enforcing the Township zoning ordinance, and their challenged acts are fairly attributable to the Township and the State for purposes of 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

### A. The Property, Agricultural-Residential Zoning, and the Rear Drainage Area

27. Kevin and Kaitlyn purchased the Property on October 29, 2021. The Property contains approximately 4.45 acres and is identified by the Township as Parcel No. A-01-02-200-007.

28. The Property is zoned Agricultural-Residential (A-R), a rural district intended to accommodate residential and agricultural uses. The Property includes a residence, older detached structures, cultivated areas, and a pond or low area toward the rear of the parcel.

29. Shortly after Plaintiffs acquired the Property, Mile City Church acquired, occupied, or began operating on the adjoining parcel. Gary's son, Travis, was associated with the church and later communicated on its behalf concerning the adjoining property.

30. In spring 2022, Kevin contacted Gary concerning water that was collecting or pooling toward the rear of the Property. Gary personally visited and inspected the Property but did not identify the source of the water.

31. Gary's 2022 visit gave him direct knowledge of the rear pond or drainage area and the layout of Plaintiffs' Property.

### B. The Township Knowingly Approved KKB's Class W Home Occupation in 2022

32. In July 2022, KKB applied for the zoning and municipal approvals required to obtain a Michigan Class W automotive wholesaler license at the Property.

33. KKB did not describe a paperwork-only enterprise. Its written application expressly stated that the proposed business would buy, clean, detail, and sell classic, antique, and collector vehicles; that vehicle transactions would occur offsite; that the business would not be open to the public;

6

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

and that the home would be used for office functions while vehicle-related work would occur inside an existing garage. (See Exhibit "A", Initial Application).

34. The application explained that Plaintiffs believed the proposed use fit the Township ordinance provision allowing restoration of classic or antique motor vehicles as a home occupation, then codified at Section 40.204(B)(7), or alternatively could be approved as a conditional home occupation.

35. The Township and its planning personnel reviewed the proposal. On July 20, 2022, the Township signed the State of Michigan zoning-approval form approving the location for a Class W automotive wholesaler and separately signed the municipal-approval form confirming that the location met municipal requirements. (See Exhibit "B", signed Zoning Approvals.)

36. The Township also issued a written approval letter addressed to Kevin and copied to Gary. The letter confirmed that the described wholesale motor-vehicle operation was an accessory home occupation; that there would be no onsite sales, outdoor vehicle storage, or major repair work; and that operations would be limited to office work and minor work on vehicles within a garage.

37. The written approval invited Plaintiffs to contact the Township if the nature of the operation changed. It did not limit KKB to recordkeeping, forbid the indoor presence of dealer vehicles, prohibit dealer-to-dealer acquisitions or dispositions, or state that the approval could be revoked immediately based on an administrator's unilateral opinion.

38. Relying on the Township's signed approvals, KKB obtained and maintained a Michigan Class W wholesaler license. A Class W wholesaler buys and sells used vehicles from and to licensed vehicle dealers and does not sell to the retail public; recurring dealer-to-dealer vehicle acquisitions and dispositions are inherent in that classification.

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

39. Plaintiffs invested time and money in the approved operation and developed relationships with licensed dealers, auctions, consignors, transporters, repair facilities, lenders, insurers, and other vendors.

### C. One 2024 Complaint, Township Direction to Keep Vehicles Indoors, and Plaintiffs' Compliance

40. For approximately two years after approval, the Township did not issue any violation notice concerning KKB.

41. In summer 2024, Gary received one anonymous telephone complaint concerning vehicles at the Property and referred it to code enforcement.

42. On July 12, 2024, before the enforcement officer located the 2022 approval, the Township sent a letter questioning whether a motor-vehicle service center or repair station had been established on the Property.

43. Plaintiffs explained that vehicles had been placed temporarily outside because the roof of an approximately seventy-year-old detached garage was being replaced and the interior could not be used during that work.

44. After locating the 2022 approval, the Township issued an August 23, 2024 follow-up letter recognizing the Class W approval and stating that dealer-related vehicles must be stored indoors because outdoor storage was prohibited by the approval.

45. Plaintiffs promptly complied with that instruction and returned dealer-related vehicles indoors. The Township did not issue a municipal civil-infraction citation, pursue a hearing, impose a fine, or obtain an adjudication that KKB was operating a prohibited repair station or otherwise violating its approval.

46. Before the 2026 barn dispute, the Township gave Plaintiffs no further written warning, violation notice, citation, inspection report, or hearing notice concerning KKB's use of the Property.

8

## D. The 2026 Church Drainage Request and Conflict with the Proposed Barn Area

47. In spring 2026, Travis telephoned Kevin concerning the adjacent church property. Kevin had not provided his private telephone number to Travis.

48. Plaintiffs had not provided Kevin's private telephone number to Travis. Upon information and belief, Travis obtained that number, information concerning the rear pond, or both from Gary or another Township source. Discovery is necessary to identify the source and any related communications.

49. Travis stated that the church wanted to expand its parking area, which would require building over or materially altering an existing retention area on the church parcel.

50. Travis asked whether Plaintiffs would grant an easement or other right allowing stormwater from the church property to be directed to the pond or drainage area at the rear of Plaintiffs' Property.

51. Plaintiffs did not immediately reject the proposal. They advised Travis to provide a plan or drawings for evaluation. Plaintiffs ultimately did not grant the requested easement or permission.

52. The proposed drainage route, easement area, or associated work would cross, burden, or conflict with the portion of Plaintiffs' Property selected for the proposed barn and its access drive. (See Exhibit "C", Proposed Site Plan for Mile City Church.)

53. Upon information and belief, Gary knew of and supported Travis's drainage objective and had a personal and familial interest in obtaining Plaintiffs' cooperation.

## E. Plaintiffs' Barn Application and the Township's Shifting Rationales

54. On April 5, 2026, Plaintiffs submitted a building-permit and zoning-compliance application for a 50-foot by 96-foot detached pole barn on the Property.

9

55. The application identified the project as an accessory building, stated a 4,800-square-foot main-floor area plus a 384-square-foot mezzanine, estimated construction costs of $200,000, and calculated the proposed building at approximately 2.5 percent of the lot area.

56. The floor plan included vehicle lifts, personal collector-vehicle storage, office and mezzanine space, and areas associated with the flower farm and KKB.

57. On April 13, 2026, Township personnel relayed an initial zoning determination that the plan "appears to be a commercial building in a residential district" and "would not be allowed here."

58. Kevin immediately responded that the Property was zoned Agricultural-Residential and requested a discussion with the zoning administrator.

59. During subsequent telephone discussions, Plaintiffs explained that the barn would be used for three categories: personal collector vehicles, flower-farm and agricultural equipment and supplies, and a limited area for the already approved home occupation.

60. On or about April 23, 2026, Kevin memorialized that Montagno had indicated he was inclined to approve the barn per their phone call, but first wanted to check whether the Property had generated enforcement issues.

61. On April 24, 2026, Montagno shifted the stated basis for nonapproval. He cited the twenty-five-percent floor-area limitation in Section 40.204(A)(4)(a) and stated that he understood there had been "several complaints about frequent off loading of vehicles" at the Property.

62. Plaintiffs revised the floor plan to delineate a 24-foot by 26-foot business workspace, approximately 624 square feet, separate from a 26-foot by 26-foot flower-business area and the remainder of the barn devoted to personal storage and personal collector vehicles.

63. The revised business area was below twenty-five percent of the approximately 2,800-square-foot dwelling area, and Plaintiffs offered to adjust it further if the Township calculated the dwelling area differently.

10

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

64. Plaintiffs also submitted a detailed April 28, 2026 narrative upon the request of Montagno, describing the Class W license, the offsite nature of all sales, the absence of retail customers, and the use of offsite facilities for major mechanical, body, and transmission work.

65. On May 19, 2026, Montagno shifted the stated basis again. He asserted that complaints showed Plaintiffs were already exceeding the permitted home occupation, that the barn would intensify that use, that the area was a "residential neighborhood," and that "there can be no regular car hauler deliveries on the road."

66. The zoning ordinance language invoked by the Township addresses whether home-occupation traffic is greater in volume and intensity than normally expected in the neighborhood and separately permits customer/client visits and deliveries within stated hours. It does not contain a categorical ban on occasional vehicle transporters.

67. Currie Road between Seven Mile and Eight Mile is a rural arterial roadway with an approximately 45-to-50-mile-per-hour speed environment and regular farm, construction, service, and heavy-truck traffic. Defendants performed no disclosed traffic count, intensity study, decibel study, sight-distance study, or objective neighborhood comparison before announcing a categorical transporter prohibition.

68. Plaintiffs repeatedly requested the dates, contents, witnesses, photographs, inspection records, and ordinance provisions supporting the alleged transporter or off-loading complaints. Defendants did not provide them during the application process.

69. Plaintiffs submitted a Michigan Freedom of Information Act request for all complaints concerning the Property. The Township's production did not include any written complaint concerning transporters, car haulers, vehicle deliveries, or vehicle off-loading. It identified the single anonymous 2024 complaint and related enforcement correspondence described above.

70. Despite the absence of documented transporter complaints, Defendants continued to rely on the claimed complaints as a basis to withhold approval and later revoke KKB's existing approval.

### F. Plaintiffs Repeatedly Narrowed the Proposal at Defendants' Direction

71. Plaintiffs attempted to resolve every stated concern without litigation. They submitted revised plans, revised narratives, operational limitations, and written offers to accept conditions of approval.

72. On April 28, 2026, Plaintiffs submitted a narrative for the business Operations at Montagno's direction to "give him as much information as possible about the approval." See Exhibit "D".

73. In a May 29, 2026 revised narrative, Plaintiffs committed that the barn would not be a retail dealership, showroom, sales lot, public repair facility, outdoor display area, outdoor storage yard, transporter terminal, or general inventory warehouse. See Exhibit "E".

74. Plaintiffs further committed that dealer-related vehicles would be kept indoors; that no retail sales, customer test drives, public repair appointments, or nighttime transporter events would occur; that transporters would enter the driveway and would not load, unload, park, or stage in the Currie Road right-of-way; and that major mechanical, body, and transmission work would remain offsite.

75. The indoor-storage commitment followed the Township's own 2024 direction that dealer-related vehicles had to be kept indoors. (See Exhibit "F" – 2024 Correspondence). No ordinance amendment or written approval condition was identified that later transformed compliance with that direction into a basis for revocation.

76. After further discussions with Montagno, Plaintiffs submitted a third revised narrative on June 29, 2026. That narrative centered the limited home-occupation component on restoration, preservation, evaluation, documentation, and other low-intensity activities involving classic and antique vehicles and eliminated any characterization of the barn as a storage or delivery operation, being that Montagno, once again was "inclined to approve" the application but wanted additional language about the antique vehicle aspect of the business. See Exhibit "G".

12

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

77. The June 29 narrative limited the business/restoration area to approximately 700 square feet or less, prohibited public repairs and retail activity, routed major work offsite, restricted vehicle movements to occasional daytime appointments, and offered to incorporate the commitments as enforceable conditions of approval.

78. Plaintiffs' preliminary site plan placed the barn and access drive toward the rear of the Property so that operations would be screened and set back from Currie Road and would not occupy the public right-of-way.

79. Nevertheless, the Township did not issue approval or a final ordinance-based denial of the barn application.

## G. Protected Petitioning Activity and the July 22, 2026 Revocation

80. Throughout April, May, June, and July 2026, Kevin acted for and with the authorization of Kaitlyn and KKB in communicating with Defendants, requesting reasons and ordinance citations, objecting to reliance on undisclosed complaints, seeking public records, criticizing inconsistent municipal action, and preserving Plaintiffs' rights to a ZBA appeal and judicial review.

81. Those communications concerned government decisionmaking, property rights, municipal accountability, and access to courts and constituted speech and petitioning protected by the First Amendment.

82. On July 4, 2026, Gary telephoned Kevin concerning alleged drag racing on Currie Road, which did not involve Plaintiffs, and vehicles with open hoods in Plaintiffs' driveway, which involved friends and family. Gary made the call on a holiday and, despite asking Kevin to return the call, later failed to respond to multiple return calls.

83. Upon information and belief, during May and June 2026 Gary also contacted neighboring owners concerning Plaintiffs' barn application. Those neighbors did not oppose the project.

13

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

84. On July 16, 2026, Kevin sent a written demand explaining that the application had been pending for nearly four months, that Plaintiffs had addressed each changing concern, that the FOIA production contained no transporter complaints, and that suit would be filed on or after August 1 if the Township did not act by the end of July.

85. Six days later, on July 22, 2026[4], Enos issued a letter on Township letterhead entitled "Revocation of Zoning Compliance Approval for Home-Based Business." (See Exhibit "H").

86. The letter purported to revoke both the zoning-compliance approval for the home-based business and the municipal approval previously supplied to the State for KKB's Class W license, effective immediately upon receipt.

87. The letter stated that the original approval had been based on representations that the use qualified under Section 40.204(B)(7), but that Township staff had reviewed "additional information," observations, and Plaintiffs' barn narratives and concluded that the principal activity was instead receiving, storage, and distribution of vehicles.

88. The letter directed Plaintiffs to cease the purportedly "unauthorized business activities immediately" and threatened enforcement if KKB continued receiving, storing, or distributing vehicles.

89. The letter did not identify a new complaint, a dated observation, an inspection report, a specific vehicle, a transporter event, an ordinance citation authorizing immediate revocation, a false statement in the 2022 application, or a condition of approval that Plaintiffs had violated.

90. The letter did not provide advance notice that revocation was being considered, disclose the evidence, offer a pre-revocation hearing, identify a neutral adjudicator, or afford Plaintiffs an opportunity to respond before the deprivation became effective.

91. The letter offered only an informal invitation to contact Enos within ten days if Plaintiffs believed the determination was based on incorrect information. That invitation did not stay the

---

[4] The Letter was not served until July 30, 2026, via email.

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

revocation, suspend the cease-operation command, identify a hearing procedure, or provide a neutral decisionmaker.

92. The revocation rationale contradicted the 2022 application and approval record. The original application disclosed buying, cleaning, detailing, and selling collector vehicles, offsite transactions, a garage component, and a business closed to the public. The Township's written approval expressly contemplated minor work on vehicles within a garage.

93. The revised barn narratives did not reveal an undisclosed business. They were submitted because Montagno and Gary repeatedly asked Plaintiffs to describe, narrow, and condition the same operation that the Township had already approved.

94. Upon information and belief, Enos did not act independently. The revocation was requested, directed, influenced, approved, or ratified in advance by Gary, Montagno, or other Township decisionmakers after Plaintiffs refused to grant the drainage rights sought for the adjacent church and after Kevin indicated a need to seek judicial relief.

## H. Comparator Evidence, Municipal Action, and Resulting Injury

95. Large pole barns and accessory structures are common in the Township's A-R District. Township records produced in response to Plaintiffs' FOIA requests include, at minimum, a 2016 approval for an approximately 42-foot by 80-foot, 3,360-square-foot pole barn at 6539 Napier Road, together with additional A-R accessory-structure records.

96. The physical size of a barn relative to a principal dwelling is not itself the ordinance standard that Defendants invoked against Plaintiffs. Defendants instead singled out Plaintiffs' approved Class W home occupation, relied on speculative future violations, and revived previously disclosed activities as a reason to deny and revoke.

97. Plaintiffs require comparator discovery concerning A-R parcels with home occupations, farm businesses, large accessory structures, specialty-vehicle activities, trailer or commercial deliveries, and other mixed residential/agricultural uses.

98. Upon information and belief, the Township did not revoke other owners' existing approvals or deny their accessory structures merely because officials speculated that the structure might permit a future violation.

99. The July 22 revocation was issued in the Township's name by the person acting as its Planning and Zoning Administrator, carried immediate legal effect, ordered cessation, and threatened Township enforcement. It was not a private act outside the Township's administrative machinery.

100. Gary, Montagno, and Enos acted within roles assigned or delegated by the Township when they reviewed the application, communicated the Township's official positions, invoked enforcement history, delayed or denied zoning approval, and revoked the prior approval.

101. The Township, through its policymakers and authorized zoning personnel, maintained or applied a policy, custom, practice, or delegated decisionmaking structure permitting a zoning administrator to make an existing municipal approval immediately ineffective without prior notice, disclosure of evidence, or a hearing.

102. Alternatively, the Township's final policymakers directed or authorized the challenged action in advance, delegated final authority over the immediate revocation and cease-operation decision to Enos and the retained planners, or adopted the unconstitutional basis for the decision. The identity and precise division of final policymaking authority are matters uniquely within Defendants' knowledge and are pleaded in the alternative under Federal Rule of Civil Procedure 8(d).

103. Plaintiffs also intend to file a protective appeal to the Salem Township Zoning Board of Appeals from the April/May barn determinations and the July 22 revocation, without waiving their federal claims or conceding that the ZBA could supply the pre-deprivation process already denied."

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

104. The immediate revocation has disrupted KKB's ability to lawfully operate at its approved location, threatened its State license and dealer relationships, impaired its use of the Property, and exposed Plaintiffs to threatened enforcement.

105. Defendants' delay and obstruction also impaired a proposed construction contract with Jon Patrick Construction, LLC, interfered with financing for the approximately $200,000 project, and deprived Plaintiffs of the use of a compliant accessory/agricultural structure. Township personnel knew that Plaintiffs' lender was awaiting written zoning approval.

106. Plaintiffs have incurred professional fees, engineering and design costs, financing costs, increased construction costs, lost business opportunities, loss of use, reputational harm, emotional distress, inconvenience, and other damages to be proven.

107. Defendants' conduct is ongoing. The revocation remains in effect, KKB remains under threat of enforcement, and the barn application remains unapproved.

## COUNT I - FIRST AMENDMENT RETALIATION

**(42 U.S.C. § 1983 - Against Salem Township, Gary Whittaker, Paul Montagno, and John Enos)**

108. Plaintiffs incorporate paragraphs 1 through the preceding paragraph as if fully restated.

109. Kevin, Kaitlyn, and KKB engaged in protected speech and petitioning by submitting and pursuing zoning applications, objecting to unsupported municipal action, requesting public records, criticizing officials, requesting written reasons and hearings, invoking appeal rights, and indicating rights to judicial relief.

110. Kevin undertook that activity for himself and as the authorized representative of Kaitlyn and KKB. Kaitlyn joined, authorized, and adopted the applications and objections concerning their jointly owned Property and KKB's approved business.

111. Defendants took materially adverse action by delaying and obstructing the barn application, invoking nonexistent or undisclosed complaints, creating serially shifting requirements, and, most significantly, revoking KKB's existing approvals and ordering immediate cessation six days after Kevin's July 16 litigation demand.

17

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

112. Those actions would deter a person of ordinary firmness from continuing to criticize municipal officials, seek records, appeal zoning action, or pursue judicial relief.

113. The protected activity was a substantial or motivating factor in the adverse action, as shown by temporal proximity, the lack of a documented violation, the contradiction between the revocation rationale and the original application, the repeated changes in rationale, the drainage conflict, and the abrupt July 22 revocation after the litigation deadline.

114. Gary personally participated by influencing the review, supplying or repeating the unsupported complaint narrative, communicating about unrelated vehicle activity, pursuing the interests of an adjacent property controlled by his son, and directing or approving adverse Township action.

115. Montagno personally participated by announcing shifting and unsupported standards, relying on alleged complaints not reflected in the Township's FOIA production, continuing to require revisions after indicating approval was likely, and contributing to the deprivation.

116. Enos personally participated by issuing the immediate revocation and cease-operation command without notice, a hearing, disclosed evidence, or a cited revocation standard, shortly after the protected litigation demand.

117. The Township is liable because the challenged revocation and cease-operation procedure was issued as official municipal action under an established policy, custom, delegated authority, or advance direction or authorization by final policymakers, as pleaded in the alternative.

118. Defendants lacked a legitimate, nonretaliatory basis for the timing and manner of the July 22 action. Any legitimate zoning concerns could have been addressed through notice, an inspection, objective conditions, a hearing, or ordinary enforcement rather than an immediate surprise revocation.

119. As a direct and proximate result, Plaintiffs suffered and continue to suffer constitutional injury and compensable damages.

18

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment on Count I and award the following relief:

A.  Declare that Defendants retaliated against Plaintiffs in violation of the First Amendment;

B.  Award compensatory damages against the responsible Defendants;

C.  Award punitive damages against the individual Defendants to the extent permitted by law;

D.  Grant preliminary and permanent injunctive relief against further retaliation and enforcement of the retaliatory revocation;

E.  Award reasonable attorney fees and costs under 42 U.S.C. § 1988; and

F.  Grant all other relief the Court deems just and proper.

## COUNT II - PROCEDURAL DUE PROCESS

**(42 U.S.C. § 1983 - Against Salem Township, Gary Whittaker, Paul Montagno, and John Enos)**

120.  Plaintiffs incorporate paragraphs 1 through the preceding paragraph as if fully restated.

121.  The Township's issued 2022 zoning-compliance and municipal approvals constituted an existing government benefit, license-related approval, and entitlement that could not be finally revoked absent the conditions and procedures required by law. KKB had a protected property interest in those approvals and in the continued use they authorized, and Kevin and Kaitlyn had protected property interests in the approved use of their land.

122.  The July 22 letter deprived Plaintiffs of those interests immediately by revoking the approvals, ordering KKB to cease operations, and threatening enforcement.

123.  The deprivation was not preceded by notice that revocation was being considered, disclosure of the charges or evidence, an opportunity to confront the claimed complaints or observations, a meaningful opportunity to respond, or a hearing before a neutral decisionmaker.

124.  No emergency, imminent danger, or need for immediate action was identified. The Township had years to investigate the approved use and months during the barn review to provide notice and a hearing.

125.  The informal invitation to contact Enos after the revocation took effect did not supply constitutionally adequate process because it did not stay the deprivation, define a hearing, provide a neutral adjudicator, disclose the evidence, or require a reasoned decision.

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

126. The risk of erroneous deprivation was exceptionally high because Defendants relied on undocumented "several complaints," misconstrued Plaintiffs' responsive narratives, ignored the 2022 application and approval letter, and acted amid an unresolved conflict involving the Supervisor's son.

127. A prompt pre-deprivation notice and hearing would have imposed little burden and would have permitted Plaintiffs to demonstrate that the original application disclosed the same activities now used as grounds for revocation.

128. The procedural deprivation was caused by the individual Defendants' conduct and the Township's policy, custom, practice, delegated authority, or final official decision permitting immediate revocation without pre-deprivation process.

129. As a direct and proximate result, Plaintiffs suffered constitutional injury and damages.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment on Count II and award the following relief:

A. Declare that the July 22, 2026 revocation was imposed without constitutionally adequate process;
B. Declare the revocation ineffective and restore the 2022 approvals unless and until the Township provides lawful notice and a constitutionally adequate hearing;
C. Enjoin enforcement of the cease-operation command and any derivative enforcement action pending lawful process;
D. Award compensatory damages against the responsible Defendants;
E. Award punitive damages against the individual Defendants to the extent permitted by law;
F. Award attorney fees and costs under 42 U.S.C. § 1988; and
G. Grant all other appropriate relief.

### COUNT III - SUBSTANTIVE DUE PROCESS
**(42 U.S.C. § 1983 - Against Salem Township, Gary Whittaker, Paul Montagno, and John Enos)**

130. Plaintiffs incorporate paragraphs 1 through the preceding paragraph as if fully restated.

131. Plaintiffs possessed constitutionally protected property interests in the issued 2022 approvals and the authorized use of the Property.

20

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

132. Defendants deprived Plaintiffs of those interests through arbitrary and capricious governmental action that lacked a rational connection to the actual record.

133. The revocation was based on a characterization that KKB was principally a receiving, storage, and distribution operation even though the Township had approved an application expressly disclosing the purchase, indoor handling, cleaning, detailing, minor vehicle work, and offsite sale of classic, antique, and collector vehicles.

134. Defendants relied on alleged transporter complaints not documented in the Township's FOIA production, treated efforts to comply with Township-requested narrative revisions as evidence of wrongdoing, and imposed a categorical delivery rule not stated in the cited ordinance provisions.

135. Upon information and belief, the actual purpose was to punish Plaintiffs, secure leverage concerning the adjacent drainage proposal, or retaliate for Plaintiffs' petitioning rather than to advance a legitimate zoning objective.

136. The immediate revocation of a long-standing approval without a violation finding, evidence disclosure, or hearing was arbitrary in the constitutional sense and was not rationally related to a legitimate governmental interest.

137. The Township and individual public Defendants caused the deprivation as alleged above.

138. As a direct and proximate result, Plaintiffs suffered constitutional injury and damages.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment on Count III and award the following relief:

A. Declare that Defendants' arbitrary revocation violated substantive due process;
B. Award compensatory damages;
C. Award punitive damages against the individual Defendants to the extent permitted;
D. Grant appropriate declaratory and injunctive relief;
E. Award attorney fees and costs under 42 U.S.C. § 1988; and
F. Grant all other just relief.

<u>**COUNT IV - EQUAL PROTECTION / CLASS OF ONE**</u>
**(42 U.S.C. § 1983 - Against Salem Township, Gary Whittaker, Paul Montagno, and John Enos)**

139. Plaintiffs incorporate paragraphs 1 through the preceding paragraph as if fully restated.

140. Plaintiffs were intentionally treated differently from other A-R property owners and home-occupation operators who were similarly situated in all material respects, including owners with large accessory structures, mixed residential/agricultural uses, ordinary business deliveries, and approved home occupations.

141. Plaintiffs located numerous property owners, some with home occupations, whose detached pole-barn square footage exceeds that of their home, through FOIA production.

142. Defendants subjected Plaintiffs to speculative pre-enforcement assumptions, shifting unpublished standards, reliance on undocumented complaints, serial plan revisions, prolonged delay, and immediate revocation while not imposing comparable treatment on the identified comparators.

143. There was no rational basis for the differential treatment. Alternatively, any conceivable distinction was not the actual basis for Defendants' action, which was motivated by animus, retaliation, bad faith, and the adjacent drainage conflict.

144. The differential treatment was intentional and was caused by the individual public Defendants and by official municipal action, policy, custom, delegated authority, or final decision as alleged above.

145. As a direct and proximate result, Plaintiffs suffered constitutional injury and damages.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment on Count IV and award the following relief:

    A. Declare that Defendants denied Plaintiffs equal protection of the laws;

    B. Award compensatory damages;

    C. Award punitive damages against the individual Defendants to the extent permitted;

    D. Grant appropriate declaratory and injunctive relief;

    E. Award attorney fees and costs under 42 U.S.C. § 1988; and

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

F.   Grant all other appropriate relief.

## COUNT V - CONSPIRACY TO DEPRIVE CIVIL RIGHTS
### (42 U.S.C. § 1983 - Against Gary Whittaker, Paul Montagno, and John Enos)

146.   Plaintiffs incorporate paragraphs 1 through the preceding paragraph as if fully restated.

147.   Upon information and belief, the individual Defendants reached an agreement, understanding, or common plan to use Township zoning authority to pressure, punish, or disadvantage Plaintiffs after Plaintiffs did not grant the requested drainage rights and continued to challenge the Township's handling of the barn application.

148.   The common objective was to deprive Plaintiffs of First Amendment, equal-protection, and due-process rights and to impair KKB's approved operation and Plaintiffs' use of the Property.

149.   Gary had a personal and familial interest in the drainage request advanced by his son and had access to, influence over, and communications with the Township's zoning personnel.

150.   The drainage request made by Gary's son supplied Gary with a personal and familial interest separate from any legitimate Township zoning objective. Upon information and belief, Gary communicated the request, Plaintiffs' refusal to grant drainage rights, or the resulting conflict with the proposed barn location to Montagno, Enos, or other Township personnel and sought, encouraged, or approved adverse municipal action.

151.   Montagno supplied shifting official rationales, relied on alleged complaints not reflected in the Township's production, and prolonged the process despite Plaintiffs' compliance with each requested revision.

152.   Enos committed the culminating overt act by issuing the immediate revocation and cease-operation command shortly after Kevin's litigation demand.

153.   Other overt acts included circulation of the unsupported complaint narrative, scrutiny of unrelated private vehicle activity, communications with neighbors, refusal to provide a stable ordinance-based standard, and use of Plaintiffs' requested revisions as purported evidence against them.

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

154. The conspirators need not each have personally performed every overt act. Each shared the general objective and provided aid, agreement, direction, influence, or implementation sufficient to cause the constitutional deprivation.

155. The precise communications are within Defendants' exclusive possession and will be developed through discovery, including emails, text messages, call records, consultant communications, and records concerning the church drainage proposal and the July 22 revocation.

156. As a direct and proximate result, Plaintiffs suffered constitutional injury and damages.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment on Count V and award the following relief:

A. Enter judgment against the individual Defendants for conspiring to deprive Plaintiffs of constitutional rights;

B. Award compensatory damages jointly and severally to the extent permitted by law;

C. Award punitive damages to the extent permitted;

D. Grant appropriate declaratory and injunctive relief;

E. Award attorney fees and costs under 42 U.S.C. § 1988; and

F. Grant all other appropriate relief.

## COUNT VI - TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS AND EXPECTANCIES
**(Michigan Law - Against Gary Whittaker, Paul Montagno, and John Enos)**

157. Plaintiffs incorporate paragraphs 1 through the preceding paragraph as if fully restated.

158. KKB possessed valid business relationships and expectancies with the State licensing authority, licensed vehicle dealers, auctions, consignors, transporters, repair facilities, insurers, lenders, and vendors, including a reasonable expectancy of continued operation under the 2022 municipal approvals.

159. Kevin and Kaitlyn possessed valid contractual and business expectancies concerning the approximately $200,000 construction project, including their relationship with Jon Patrick Construction, LLC and County Central Bank.

24

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

160. The individual Defendants knew of those relationships and expectancies. The 2022 licensing process, the barn application, the identified contractor, the lender-related communications, and Plaintiffs' narratives disclosed them directly.

161. Defendants intentionally interfered by delaying and obstructing the permit, supplying unsupported zoning rationales, invoking nonexistent or undisclosed complaints, revoking the approvals required for KKB's licensed location, ordering KKB to cease operations, and threatening enforcement.

162. The interference was independently wrongful, undertaken with malice and without legitimate justification, and intended to pressure or punish Plaintiffs for refusing the drainage request and exercising protected rights.

163. To the extent Defendants invoke governmental immunity, Plaintiffs plead that Gary acted outside the proper scope of executive authority and for a private familial purpose, and that Montagno and Enos acted in bad faith, with malice, and outside any lawful authority to invent facts, retaliate, or revoke an approval without process. Plaintiffs plead these matters in the alternative pending discovery.

164. Defendants' conduct caused disruption, loss, delay, increased costs, lost transactions or opportunities, and other damages.

165. By way of example, in accepting the July 22 correspondence, Plaintiffs now have $140,000.00 worth of inventory vehicles that cannot be sold. Wholesale relationships cannot be maintained, insurance costs would continue to run on dealer plates that cannot be used.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment on Count VI and award the following relief:

A. Award compensatory and exemplary damages allowed by Michigan law against the responsible individual Defendants;

B. Award pre- and post-judgment interest, taxable costs, and other recoverable relief; and

C. Grant all other just and proper relief.

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

## COUNT VII - CIVIL CONSPIRACY
### (Michigan Law - Against Gary Whittaker, Paul Montagno, and John Enos)

166. Plaintiffs incorporate paragraphs 1 through the preceding paragraph as if fully restated.

167. The individual Defendants combined and acted in concert to accomplish the unlawful purpose of tortiously interfering with Plaintiffs' business relationships and expectancies and to accomplish otherwise lawful zoning functions through unlawful means, including malice, bad faith, retaliation, fabricated or unsupported factual premises, and abuse of governmental authority for a private purpose.

168. Gary allegedly acted with a personal and familial stake independent of any legitimate Township interest, while Montagno and Enos were retained outside consultants employed by a separate private firm. Plaintiffs therefore plead that the alleged combination was not merely routine intracorporate coordination among employees of a single municipal entity.

169. The overt acts included the communications and conduct alleged above, the changing denial rationales, reliance on undocumented complaints, delay after promised approval, and the July 22 revocation.

170. The conspiracy is derivative of the actionable tortious-interference claim and caused the damages alleged above.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment on Count VII and award the following relief:

A. Award compensatory and exemplary damages allowed by Michigan law against the responsible individual Defendants;

B. Award pre- and post-judgment interest, taxable costs, and other recoverable relief; and

C. Grant all other relief the Court deems just and proper.

## COUNT VIII - DECLARATORY AND INJUNCTIVE RELIEF
### (28 U.S.C. §§ 2201-2202 and Supplemental Michigan Law - Against Salem Township and the Public Defendants)

171. Plaintiffs incorporate paragraphs 1 through the preceding paragraph as if fully restated.

172. An actual and immediate controversy exists concerning the validity of the July 22 revocation, the continuing force of the 2022 zoning and municipal approvals, the procedures required

26

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

before revocation, the permissible grounds for zoning review, and Defendants' authority to enforce the cease-operation command.

173. The July 22 letter cited no ordinance provision authorizing Enos to revoke the approvals immediately, identified no false statement in the original application, and did not follow the notice, investigation, hearing, or adjudicatory procedures ordinarily associated with a zoning violation or rescission.

174. The Township zoning ordinance requires its administrators to apply the ordinance as written, to provide written reasons when a zoning-compliance application does not conform, and to approve compliant applications. It does not authorize denial or revocation based solely on speculation that an owner may violate the ordinance in the future.

175. Plaintiffs are entitled to a declaration that the July 22 revocation is unconstitutional, ultra vires, arbitrary, and ineffective, and that the 2022 approvals remain operative unless and until lawfully modified or revoked after adequate notice and a meaningful hearing.

176. Plaintiffs are further entitled to an injunction prohibiting Defendants from conditioning, delaying, denying, or revoking zoning approvals to secure a drainage easement or other private benefit for the adjoining church property or to retaliate against Plaintiffs' protected activity.

177. Plaintiffs do not ask this Court to confer a zoning use that the Township has never considered. They request restoration of the existing 2022 approval and an impartial, ordinance-based decision on the barn application without retaliatory, conflicted, or fabricated considerations.

178. Without equitable relief, Plaintiffs face continuing enforcement, loss of the approved business location, impairment of their State license, continuing project delay, and injuries that cannot be fully remedied by damages alone.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment on Count VIII and award the following relief:

A. Declare the July 22, 2026 revocation void and unenforceable;

B. Declare that the 2022 zoning and municipal approvals remain effective pending any lawful revocation process;

C. Preliminarily and permanently enjoin enforcement of the July 22 cease-operation command;

D. Require any further zoning review to be conducted by a neutral decisionmaker under disclosed, objective ordinance standards and without participation by any official with a disqualifying personal interest;

E. Enjoin Defendants from conditioning municipal action on a drainage easement or other private benefit for the adjacent church property;

F. Require a prompt written decision on the barn application identifying the precise ordinance provisions and record facts relied upon, without directing the substantive result unless the Court determines that only one lawful result is available; and

G. Grant all further relief authorized by 28 U.S.C. § 2202 and equity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants and provide the following relief, cumulatively and in the alternative as appropriate:

A. A declaration that Defendants violated Plaintiffs' rights under the First and Fourteenth Amendments;

B. A declaration that the July 22, 2026 revocation is void, unconstitutional, and unenforceable;

C. A temporary restraining order and preliminary and permanent injunction preserving and restoring the 2022 zoning and municipal approvals and prohibiting enforcement of the cease-operation command pending lawful process;

D. An injunction against retaliation, selective enforcement, conflicted participation, and use of zoning authority to obtain private drainage rights or other private benefits;

E. A prompt, neutral, and ordinance-based decision concerning the barn application;

F. Compensatory damages in an amount to be determined by the trier of fact;

G. Punitive damages against the individual Defendants where authorized;

H. Reasonable attorney fees and litigation expenses under 42 U.S.C. § 1988 and any other applicable authority;

I. Pre- and post-judgment interest and taxable costs;

J. Nominal damages for any constitutional violation not resulting in separately proven compensatory damages; and

K. All other relief the Court deems just, equitable, and proper.

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

Respectfully submitted,
THE RUBINSTEIN LAW FIRM

Dated: July 30, 2026

By: *Jan Jeffrey Rubinstein*

Jan Jeffrey Rubinstein (P57937)
Attorney for Plaintiffs
30665 Northwestern Highway, Suite 165
Farmington Hills, Michigan 48334
(248) 220-1415
jjr@therubinsteinfirm.com

## <u>VERIFICATION UNDER 28 U.S.C. § 1746</u>

We declare under penalty of perjury that we have reviewed the foregoing Verified Complaint; that the factual allegations based on our personal knowledge are true and correct; and that the allegations stated on information and belief are believed to be true after reasonable inquiry. We understand that highlighted drafting placeholders must be completed or removed before filing.

Executed on _____, 2026, in _____ County, Michigan.

_____

**KEVIN M. BURTON**

Individually and as Manager of KKB Enterprises, LLC

Executed on _____, 2026, in _____ County, Michigan.

_____

**KAITLYN BURTON**

Individually and as Manager of KKB Enterprises, LLC

30

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable as of right under Federal Rule of Civil Procedure 38 and the Seventh Amendment to the United States Constitution.

Respectfully submitted,
THE RUBINSTEIN LAW FIRM

Dated: July 30, 2026

By: *Jan Jeffrey Rubinstein*
     Jan Jeffrey Rubinstein (P57937)
     Attorney for Plaintiffs
     30665 Northwestern Highway, Suite 165
     Farmington Hills, Michigan 48334
     (248) 220-1415
     jjr@therubinsteinfirm.com

# EXHIBIT "A"

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

**To:** Salem Twp. Zoning Authority

**From:** Kevin M. Burton

**Re:** Wholesale Auto Dealer License Application.

**Date:** July 12, 2022

To whom it may concern,

I am one of the registered homeowners at 9884 Currie Road, Salem Twp., MI 48167. The property is zoned as Agricultural Residential (AR). I am working to apply with the State of Michigan for a Wholesale Automotive Dealer's License.

If you are unfamiliar with this License, the Wholesale License allows a person to buy and sell vehicles to and from auctions and dealerships. It does *not* permit a license holder to sell vehicles to the general public.

One of the necessary steps to achieving this license requires me to seek approval from the Zoning Board and Municipality in which the business will be located. Enclosed are the necessary forms for the Township's approval.

Section 40.204 of the Salem Twp. Zoning Ordinance permits Home Occupations not expressly listed in Section 40.204 on conditional use basis. 40.204(B)(7) permits restoration of classic or antique motor vehicles, boats, and similar equipment, provided that such activities do not violate Section 40.204C (Prohibited Uses). On the other hand, section 40.204(C)(1) prohibits motor vehicle service centers or repair stations, welding shops, and storage or dismantling yards.

My planned business would be to buy, clean, detail, and sell classic, antique, and collector vehicles. All of my transactions would be done OFFSITE through auction companies – therefore the business conducted at my house would simply be a home office for the necessary title transactions, and in my garage where I work on the vehicles. My business would not be open to the public.

Based on this, I believe the property qualifies under section 40.204 for a conditional use or alternatively, as a permitted use under 40.204(B)(7). I hope I can gain your approval so that I may proceed with my application at the state license level.

If you have any questions, or would like to discuss this further, please let me know and I would be happy to discuss.

Respectfully,

Kevin M. Burton

(248) 330-9408

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

# EXHIBIT "B"

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151



**SALEM TOWNSHIP**

9600 Six Mile • PO Box 75002 • Salem, Michigan 48175          Phone: 248.349.1690 • Fax: 248.349.9350

July 20, 2022

Kevin Burton
9984 Currie Road
Northville, MI 48167

| Subject: | Wholesale Auto Dealer License |
|---|---|

Mr Burton,

This letter confirms that the proposed wholesale motor vehicle operation you have described is considered an accessory home occupation use of the property.

As described in the materials you submitted and confirmed on the phone, there will be no on-site sales, there will be no outdoor storage of vehicles on the property, and there will be no major repair work on the property. Operations on the property will be limited to office work and minor work on vehicles within a garage.

The signed zoning approval for Class W Automotive Wholesaler for KKB Enterprises, LLC for 9984 Currie Road is attached.

Please contact us if you have any addition questions or if the nature of your operation changes.

Sincerely,

Zach Michels
Planning and Zoning Administrator

cc:     Gary Whittaker, Supervisor
        Bruce Reeve, Treasurer
        Del Wensley, Clerk

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

# ZONING APPROVAL

Name of Dealership: KKB Enterprises, LLC

Dealership Address: 9984 Currie Road          Northville          48167
                    _____(street)_____  ____(city)____  ___(zip)___

Dealer License Number (if applicable): _____

- ☐ Class A - New Vehicle Dealer
- ☐ Class B - Used Vehicle Dealer
- ☐ Class C - Used Vehicle Parts Dealer
- ☐ Class D - Broker
- ☐ Class E - Distressed Vehicle Transporter
- ☐ Class F - Vehicle Scrap Metal Processor
- ☐ Class G - Vehicle Salvage Pool
- ☐ Class R - Automotive Recycler
- ☑ Class W - Automotive Wholesaler

Zoning Authority:

The license(s) being applied for (checked above) would permit, but not require, all business activities described on the reverse. Please check the appropriate category below, complete the signature portion of this form, and return this completed form to the applicant.

If you have any questions or concerns, contact the Michigan Department of State, Licensing Unit, at 1-888-SOS-MICH (1-888-767-6424).

Thank you.

☑ Location is **APPROVED** for dealer classification(s) checked above.

☐ Location is **DISAPPROVED** because it is not properly zoned.

☐ Location is **APPROVED** because there is NO zoning ordinance in effect.

| | | |
|---|---|---|
| _____ | 7/20/22 | (248) 349.1690 |
| Signature of Zoning Authority | Date | Telephone Number |
| ZACH MICHELS | SALEM TOWNSHIP | |
| Printed Name of Zoning Authority | Jurisdiction (City, Township, etc.) | |

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

01/2019

# MUNICIPALITY APPROVAL

Name of Dealership: KKB Enterprises, LLC

Dealership Address: 9884 Currie Road      Northville      48167

                            (street)                         (city)              (zip)

Dealer License Number (if applicable): _____

- ☐ Class A - New Vehicle Dealer
- ☐ Class B - Used Vehicle Dealer
- ☐ Class C - Used Vehicle Parts Dealer
- ☐ Class D - Broker
- ☐ Class E - Distressed Vehicle Transporter
- ☐ Class F - Vehicle Scrap Metal Processor
- ☐ Class G - Vehicle Salvage Pool
- ☐ Class R - Automotive Recycler
- ☒ Class W - Automotive Wholesaler

**Municipal Authority:**

The license(s) being applied for (checked above) would permit, but not require, all business activities described above. Please check the appropriate category below, complete the signature portion of this form, and return this completed form to the applicant.

If you have any questions or concerns, contact the Michigan Department of State, Licensing Unit, at 1-888-SOS-MICH (1-888-767-6424).

Thank you.

---

Municipality requirements may include; local building code requirements, land use requirements, sign ordinances, local licensure, etc...

☒ Location **MEETS** all the municipal requirements for dealer classification(s) checked above.

☐ Location **DOES NOT MEET** all the municipal requirements for dealer classification(s) checked above. Please list the reason(s).

Reason:

☐ There are **NO MUNICIPAL REQUIREMENTS** in this jurisdiction for dealer classification(s) checked above.

_____    7/20/22    (248) 349.1690
Signature of Municipal Authority           Date              Telephone Number

ZACH MICHELS             SALEM TOWNSHIP
Printed Name of Municipal Authority        Jurisdiction (City, Township, etc.)

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

# EXHIBIT "C"

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

Doc ID: 06fa77ecdb0efd8d315967aed289cf22c15e4151

# EXHIBIT "D"

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151



Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

# THE RUBINSTEIN LAW FIRM

*Attorneys and Legal Counselors*

30665 Northwestern Highway, Suite 165

Farmington Hills, MI 48334

Phone: (248) 220-1415

Fax: (248) 213-6394

www.therubinsteinfirm.com

Jan Jeffrey Rubinstein, Esq.
jjr@therubinsteinfirm.com
*also licensed in Florida
and Pennsylvania

Florida address:
2637 E Atlantic Blvd #28613

Associate Attorneys

Kevin Burton, Esq.
kb@therubinsteinfirm.com

Sarah L. Belzer, Esq.
slb@therubinsteinfirm.com

---

April 28, 2026

**Re:** 9884 Currie Rd., Salem Twp., MI 48167
**To:** Paul Montagno, Zoning Administrator
**Cc:** Gary Whittaker, Township Supervisor; and
   Anne Alexander, Building Coordinator

This revised narrative is submitted in support of the application to construct a 50' x 96' detached barn at 9884 Currie Road. The revised plans are intended to clarify the proposed use of the structure, address the Township's questions regarding dealer-related activity, and demonstrate that the barn will remain compatible with the Agricultural-Residential (A-R) District and with the standards applicable to home occupations and accessory structures.

## 1. Proposed Use of the Building

As shown on the revised plans, the proposed barn will be used for three distinct purposes:

   (a) storage of personal collector vehicles owned by the residents of the property;

   (b) storage of equipment, tools, supplies, and related materials for the approved flower-farm & farming operation on the parcel; and

   (c) a limited, clearly delineated area for dealer-related activity associated with the existing Michigan wholesale vehicle dealer license already approved at this location.

The revised floor plan will show these areas separately, using dotted lines and labels, so that the Township can identify the portion of the building allocated to the dealer-related use, the portion allocated to flower-farm storage and equipment, and the portion allocated to personal vehicle storage.

## 2. Delineated Dealer Area & 25% Limitation

We understand the Township's position that any dealer-related activity operating as a home occupation must comply with Section 40.204 of the Salem Township Zoning Ordinance, including the requirement that the total floor area used by the home occupation, whether within the dwelling or an accessory building, not exceed twenty-five percent (25%) of the floor area of the dwelling unit. Salem Twp. Zoning Ordinance § 40.204(A)(4)(a).

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

To address that standard directly, the revised plan will identify a specific dealer-related area within the barn that does not exceed the allowable percentage based on the home's square footage (~roughly 2,800sqft). The balance of the structure is not proposed as dealer space and instead will remain devoted to personal vehicle storage and to flower-farm & agricultural storage and equipment.

### 3. Agricultural & Flower-Farm Component

The property is located in the Agricultural-Residential (A-R) District, which the ordinance establishes as a Rural District to preserve lands suitable for long-term agricultural uses and to protect agricultural enterprises from incompatible encroachment. Salem Twp. Zoning Ordinance § 10.203. The ordinance defines farm products to include flowers, and it allows farm products direct marketing businesses associated with an active farm operation. *Id.* §§ 2.03 (definitions of "Farm Products Direct Marketing Business" and "Farm"), 40.103.

The ordinance further provides that a parcel may be used for general and specialized farming and agricultural activities, and that any farm building or structure used as part of the farming operation may be used for the day-to-day operation of such activities and for the storage or preservation of products and materials associated with the farm operation. *Id.* § 40.104.

Consistent with those provisions, a substantial portion of the proposed barn will be used for storage of flower-farm equipment, tools, materials, and related agricultural supplies.

### 4. Dealer-Related Activity & Michigan Class W Wholesaler License

We hold a Michigan wholesale vehicle dealer license. Under Michigan's official dealer-licensing materials, a Class W wholesaler is authorized to buy and sell used vehicles from and to licensed vehicle dealers and may not buy, sell, or otherwise deal in vehicles to a person other than a licensed vehicle dealer.

The same official materials state that the wholesaler's premises may be used for the storage of vehicles purchased by the wholesaler prior to sale to a licensed vehicle dealer, but the premises are not to be used for display of vehicles.

In practice, sales occur offsite, including dealer-to-dealer transactions and disposition through auction or consignment relationships. There is no public-facing retail sales operation proposed or conducted at the property, no outdoor sales lot, and no vehicle showroom proposed within the barn.

The dealer-related portion of the barn is intended for temporary indoor storage of vehicles lawfully held in connection with the wholesale license, for light pre-sale preparation incidental to storage and transfer, and for related office & record-keeping activity. These vehicles are primarily collector cars, complying with the permitted home occupation use of classic car restoration. There will be no public repair operation, no major mechanical work, no body work, no transmission work, no dismantling, and no motor vehicle service center or repair station use conducted at this location.

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

When outside repair work is necessary, it is contracted offsite. By way of example, major mechanical work is handled through Car-Aid in Southfield; body work through Body Curve in Farmington; and transmission work through Affordable Transmissions in Livonia.

## 5. Operational Commitments

- No public retail sales will occur on the property.

- No outdoor display or outdoor storage of dealer-related vehicles, parts, equipment, or supplies is proposed.

- Any unlicensed or inoperable vehicles will be kept within the enclosed structure, consistent with Salem Twp. Zoning Ordinance § 61.03(B).

- Customer or client visits, if any, and deliveries associated with the home occupation will be limited to the hours permitted by the ordinance, namely between 7:00 a.m. and 8:00 p.m. Salem Twp. Zoning Ordinance § 40.204(A)(10). In practice, deliveries generally occur only during daytime hours.

- Vehicle deliveries are infrequent. While concerns have been raised, Salem Twp. Zoning Ordinance § 40.204(5) permits traffic in connection with the business so long as it does not exceed 5% of traffic on the roadway. Currie is a busy road and the infrequent deliveries do not near the 5% restriction. When they occur, they are typically made by a small transporter truck with a 3-car goose-neck trailer dropping off one vehicle, and occasionally two vehicles. During the busiest season, deliveries are expected to occur at most about four times per month, and typically none occur during winter months.

- The revised site plan places the building and driveway so that barn-related activity is set back from the roadway and less visible from Currie Road, in an effort to preserve the rural character of the area and avoid disturbances to neighboring properties.

- We are willing to maintain the delineation of the dealer-related area shown on the plan so that dealer-related use remains limited and subordinate to the residential and agricultural use of the property.

## 6. Ordinance Consistency

The revised proposal is intended to address the standards in Section 40.204 by limiting the dealer-related area to a defined portion of the barn; keeping that use subordinate to the residential use of the parcel; avoiding on-site retail sales; avoiding outdoor display or storage; and restricting deliveries to the ordinance's permitted time window. Salem Twp. Zoning Ordinance § 40.204(A).

The flower-farm portion of the barn is consistent with the A-R District's agricultural purpose and with the ordinance provisions permitting farming operations and farm-related structures. *Id.* §§ 10.203, 40.103, 40.104.

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

The personal-vehicle storage portion of the barn is also consistent with the general accessory-structure provisions applicable to residential parcels, which contemplate storage of household, lawn, garden, and personal recreation & vehicle-related items, and which allow other permitted accessory uses after the necessary zoning approvals are obtained. *Id.* § 3.01.

## 7. Request

For these reasons, we respectfully request approval of the detached barn as shown on the revised plans, with the understanding that the dealer-related portion will remain limited to the delineated area shown on the plan and that the balance of the building will be used for personal vehicle storage and for the flower-farm & farming operation.

Thank you for your consideration in this regard and for taking the time to have a conversation with me about this project. If you have any questions, please feel free to contact the undersigned at your convenience.

Very truly yours,

/s/ *Kevin M. Burton*

Kevin M. Burton, Esq.

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

# EXHIBIT "E"

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

# THE RUBINSTEIN LAW FIRM

*Attorneys and Legal Counselors*
30665 Northwestern Hwy., Ste. 165
Farmington Hills, MI 48334
Phone: (248) 220-1415
Fax: (248) 213-6394
www.therubinsteinfirm.com

Jan Jeffrey Rubinstein, Esq.
jjr@therubinsteinfirm.com
*also licensed in Florida
and Pennsylvania

Florida address:
2637 E Atlantic Blvd #28613
Pompano Beach, FL 33062

Associate Attorneys:

Kevin M. Burton, Esq.
kb@therubinsteinfirm.com

---

May 29, 2026

**Re: 9884 Currie Road, Salem Township, Michigan - Revised Pole Barn Use Narrative and Operational Commitments**

To: Paul Montagno, Zoning Administrator
Cc: Gary Whittaker, Township Supervisor; Anne Alexander, Building Coordinator

This revised narrative is submitted in support of the application to construct a 50' x 96' detached barn at 9884 Currie Road. This narrative supersedes any prior use narrative to the extent the prior narrative is inconsistent with the operational commitments below.

The purpose of this revision is to address the Township's stated concern regarding the dealer-related portion of the building, particularly temporary indoor vehicle storage and the number or intensity of vehicle deliveries. The applicant's intent is to obtain approval for the detached barn while keeping all dealer-related activity limited, incidental, subordinate, enclosed, and compatible with the Agricultural-Residential (A-R) District and with the standards applicable to home occupations and accessory structures.

## 1. Proposed Use of the Building

As shown on the submitted plans, the proposed barn will be used for three distinct purposes:

(a) storage of personal collector vehicles owned by the residents of the property;

(b) storage of equipment, tools, supplies, and related materials for the approved flower-farm and farming operation on the parcel; and

(c) a limited, clearly delineated area for the existing Michigan Class W wholesale vehicle dealer license, only to the extent allowed by the Township's prior approvals and Salem Township Zoning Ordinance Section 40.204.

The floor plan will identify these areas separately by labels and/or dotted lines so that the Township can identify the portion of the building allocated to dealer-related use, the portion allocated to flower-farm and agricultural storage, and the portion allocated to personal vehicle storage.

## 2. Delineated Dealer Area and 25% Limitation

The applicant understands the Township's position that any dealer-related activity operating as a home occupation must comply with Section 40.204 of the Salem Township Zoning Ordinance, including the requirement that the total floor area used by the home occupation, whether within the dwelling or within an accessory building on the same lot, shall not exceed twenty-five percent

Page -1-

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

(25%) of the floor area of the dwelling unit. Salem Twp. Zoning Ordinance Section 40.204(A)(4)(a).

The dwelling is approximately 2,800 square feet. Based on that figure, the dealer-related area will not exceed approximately 700 square feet. If the Township calculates the dwelling floor area differently, the applicant will adjust the dealer-related area so that it remains within the applicable 25% limitation. The balance of the barn is not proposed as dealer space and will remain devoted to personal collector-vehicle storage and flower-farm/agricultural storage and equipment.

### 3. Agricultural and Flower-Farm Component

The property is located in the Agricultural-Residential (A-R) District. The ordinance establishes the A-R District as a Rural District intended to preserve lands suitable for long-term agricultural uses and to protect agricultural enterprises from incompatible encroachment. Salem Twp. Zoning Ordinance Section 10.203.

The ordinance also recognizes farm-products direct marketing businesses associated with an active farm operation and provides that a parcel may be used for farming and agricultural activities, including farm buildings or structures used as part of the farming operation for day-to-day operations and for storage or preservation of farm products and related materials. Salem Twp. Zoning Ordinance Sections 40.103 and 40.104.

Consistent with those provisions, a substantial portion of the proposed barn will be used for storage of flower-farm equipment, tools, materials, supplies, irrigation items, soil amendments, seasonal agricultural materials, and other items customarily associated with the flower-farm and farming operation.

### 4. Personal Collector-Vehicle Storage

A portion of the proposed barn will be used for storage of personal collector vehicles owned by the residents. These personal vehicles are not dealer inventory, will not be displayed for sale on the premises, and will not be part of any public-facing business operation. The personal-vehicle storage area will remain separate from the delineated dealer-related area.

### 5. Dealer License and Limited Dealer-Related Area

The property has an existing Michigan Class W wholesale vehicle dealer license. The applicant understands that a Class W wholesaler is materially different from a retail dealership. The applicant does not conduct and is not requesting approval for a retail sales lot, vehicle showroom, public repair facility, motor vehicle service center, outdoor vehicle display area, or public-facing dealership use at the property.

The limited dealer-related area inside the barn is intended only for the following purposes:

(a) recordkeeping and office functions associated with the existing Class W wholesale dealer license;

(b) **limited interim indoor custody of occasional dealer vehicles, subject to the operational limits stated below;** and

(c) light pre-transfer preparation that does not constitute a public repair facility, motor vehicle service center, or repair-station use.

**For clarity, the dealer-related area is not proposed as a general vehicle storage warehouse, inventory lot, sales lot, showroom, outdoor display area, or repair facility. Sales and**

Page -2-

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

**disposition of vehicles will continue to occur offsite, including through licensed dealers, auctions, consignment relationships, or other lawful offsite dealer-to-dealer channels.**

## 6. Prior Compliance with Township Direction Regarding Indoor Storage

The applicant also wishes to clarify the enforcement history. The only violation notice of which the applicant is aware[1] was promptly addressed. **In connection with that matter, the applicant was instructed by Paul Montagno that vehicles associated with the dealer license needed to be stored indoors.** The applicant complied with that instruction.

The limited indoor custody & storage described in this revised narrative is not intended to create an outdoor sales lot, outdoor storage yard, or visible expansion of the home occupation. To the contrary, *it reflects the Township's prior direction that dealer-related vehicles be kept indoors, and it is paired here with specific limits on floor area, number of vehicles, delivery frequency, exterior visibility, and operational intensity.*

The applicant is not aware of any subsequent ordinance amendment or Township approval condition that forbids compliant indoor storage of occasional dealer-related vehicles when such storage remains within the 25% home-occupation area, occurs wholly inside an enclosed structure, and otherwise complies with Section 40.204. If the Township contends that a later ordinance change, written approval condition, or other authority now prohibits this temporary indoor-storage approach, the applicant respectfully requests that the Township identify that authority so it can be addressed directly.

## 7. Operational Commitments Regarding Dealer Vehicles and Deliveries

To directly address the Township's concerns about temporary storage and delivery intensity, the applicant is willing to accept the following operational limitations as conditions of zoning approval:

(a) No outdoor dealer-vehicle storage or display. Dealer-related vehicles, parts, equipment, or supplies will not be stored or displayed outdoors. Any dealer vehicle kept at the property will be kept entirely within the enclosed barn and within the delineated dealer-related area.

(b) No retail sales or public customer activity. No public retail vehicle sales, customer test drives, retail customer visits, public repair appointments, or public-facing dealer activity will occur at the property.

(c) No showroom or sales lot. The barn will not be used as a showroom, display area, or sales lot. Vehicles will not be advertised, staged, displayed, or shown for retail sale at the property.

(d) Limited number of dealer vehicles onsite. No dealer related vehicles will be kept outdoors. Applicant will work to route vehicles directly to offsite repair facilities, auctions, consignment dealers, or licensed dealers and limit those brought to the property.

(f) Daytime weekday scheduling. Dealer-related transporter events, if any, will occur only by appointment, between 10:00 a.m. and 3:00 p.m, to avoid any conflict with the flow of traffic on Currie. No dealer-related transporter deliveries or pickups will occur at night. **These limits are more restrictive than the general delivery window in Section 40.204(A)(10).**

---

[1] In reference to a complaint received in the summer of 2024 while cars were parked on the grass, which was due to a new roof being put on the existing structure that is over 70 years old.

Page -3-

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

(g) No roadway unloading or staging. Transporters will be directed to enter the driveway and complete any loading or unloading on the property. No loading, unloading, staging, or parking of transporters will occur in the Currie Road right-of-way.

(h) Minimal duration and no idling. Transporter activity will be limited to the time reasonably necessary to load or unload the single vehicle involved. Transporters will be instructed not to idle unnecessarily.

(j) No intensification without approval. The applicant will not increase the dealer-related area, increase the number of dealer vehicles stored at the property, increase the transporter frequency, or add public-facing dealer activity without first obtaining any additional Township approval required by the ordinance.

## 8. Light Preparation Only; No Repair Facility

The applicant is not requesting approval for a motor vehicle service center, repair station, public repair facility, body shop, transmission shop, welding shop, storage yard, dismantling yard, or similar prohibited home-occupation use.

Any light pre-transfer preparation within the delineated dealer area will be limited to activities customary and incidental to vehicle storage and transfer, such as interior/exterior cleaning, battery tender or battery charging, tire inflation, visual inspection, photographing, and similar non-public, non-commercial preparation. The applicant will not perform engine work, transmission work, body work, painting, welding, brake work, oil changes, tire mounting, dismantling, or major mechanical repairs at the property.

When outside repair work is necessary, it is contracted offsite. Major mechanical work is handled offsite through Car-Aid in Southfield; body work through Body Curve in Farmington; and transmission work through Affordable Transmissions in Livonia.

## 9. Compatibility With Home-Occupation Standards

The revised proposal is intended to comply with Section 40.204 by:

(a) keeping the dealer-related area within the 25% floor-area limitation;

(b) keeping the dealer-related activity clearly incidental and subordinate to the residential use of the property;

(c) avoiding exterior display or storage associated with the home occupation;

(d) avoiding on-site retail sales and public customer activity;

(e) limiting any dealer-related deliveries to daytime weekday appointments;

(f) avoiding any loading, unloading, or staging within the Currie Road right-of-way;

(g) avoiding any public repair-facility or motor-vehicle-service-center use; and

(h) maintaining the building placement and driveway configuration shown on the plans so that activity is set back from the roadway and compatible with the rural/agricultural character of the property.

## 10. Request for Approval

For these reasons, the applicant respectfully requests approval of the detached barn as shown on the submitted plans, subject to the operational commitments stated in this revised narrative. The

Page -4-

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

Page -5-

applicant is willing to have these commitments incorporated into the Township's approval if doing so resolves the Township's concern regarding temporary indoor storage and vehicle-delivery intensity.

Thank you for your consideration and for the time spent discussing this project. The applicant's goal is to resolve the Township's concerns cooperatively and to operate within clear, agreed-upon boundaries.

Respectfully submitted,
THE RUBINSTEIN LAW FIRM

Dated: May 29, 2026

By: /s/

Kevin M. Burton (P86626)

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

# EXHIBIT "F"

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151



**SALEM TOWNSHIP**

9600 Six Mile • PO Box 75002 • Salem, Michigan 48175          Phone: 248.349.1690 • Fax: 248.349.9350

**TO:**      **KEVIN BURTON**
            9884 Currie Rd.
            Northville, MI 48167

**DATE:**    August 23, 2024

**RE:**      **Ordinance Violation Notice: Outdoor Storage of Vehicles**

Dear Mr. Burton,

After our phone conversation on August 9, 2024, I was able to locate the zoning approval paperwork for your Class W - Automotive Wholesaler business at 9884 Currie Rd (approval paperwork enclosed). As indicated in the letter from Zach Michels dated July 20, 2022, one of the conditions of this approval was that outdoor storage of the vehicles you are working on through the business is prohibited.

At last count there were eight motor vehicles observed stored on the property; six in the driveway, one next to a travel trailer north of the detached structure, and one partially visible from the road behind the detached structure. If any of these vehicles are part of your Wholesale Auto Dealer business, they are required to be stored within the garage.

We appreciate your cooperation in this matter. Should you have any questions regarding this matter feel free to contact me.

Sincerely,

Michael Carlson
Ordinance Enforcement

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

Case 2:26-cv-12650-MAG-APP   ECF No. 1, PageID.56   Filed 07/31/26   Page 56 of 66

# EXHIBIT "G"

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

# THE RUBINSTEIN LAW FIRM

*Attorneys and Legal Counselors*

Jan Jeffrey Rubinstein, Esq.
jjr@therubinsteinfirm.com
*also licensed in Florida
and Pennsylvania

Florida address:
2637 E Atlantic Blvd #28613
Pompano Beach, FL 33062

30665 Northwestern Hwy., Ste. 165
Farmington Hills, MI 48334
Phone: (248) 220-1415
Fax: (248) 213-6394
www.therubinsteinfirm.com

Associate Attorneys:

Kevin M. Burton, Esq.
kb@therubinsteinfirm.com

Devin I. Stamper, Esq.
ds@therubinsteinfirm.com

June 29, 2026

**Re: 9884 Currie Road, Salem Township, Michigan – *3rd* Revised Pole Barn Use Narrative and Operational Commitments**

To: Paul Montagno, Zoning Administrator
Cc: Gary Whittaker, Township Supervisor; Anne Alexander, Building Coordinator

Re: 9884 Currie Road, Salem Township, Michigan - Revised Pole Barn Use Narrative and Operational Commitments

To: Paul Montagno, Zoning Administrator
Cc: Gary Whittaker, Township Supervisor; Anne Alexander, Building Coordinator

This *third* revised narrative is submitted in support of the application to construct a 50' x 96' detached barn at 9884 Currie Road. This narrative supersedes any prior use narrative to the extent the prior narrative is inconsistent with the operational commitments below.

This revision is intended to address the Township's most recent comments regarding the dealer-related portion of the building. In particular, this revision clarifies that the home-occupation component is centered on the restoration of classic and antique motor vehicles, and it narrows the language concerning the indoor presence and movement of vehicles so that the barn is not characterized, used, or approved as a storage warehouse, vehicle inventory lot, transporter terminal, sales lot, showroom, or public repair facility.

The applicant's intent is to obtain approval for the detached barn while keeping all home-occupation activity limited, incidental, subordinate, enclosed, low-intensity, and compatible with the Agricultural-Residential (A-R) District and with Salem Township Zoning Ordinance Section 40.204.

## 1. Proposed Use of the Building

As shown on the submitted plans, the proposed barn will be used for three distinct purposes:

(a) storage of personal collector vehicles owned by the residents of the property;

(b) storage of equipment, tools, supplies, and related materials for the approved flower-farm and farming operation on the parcel; and

(c) a limited, clearly delineated home-occupation area for restoration of classic and antique motor vehicles and related recordkeeping associated with the existing Michigan Class W wholesale

Page -1-

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

vehicle dealer license, only to the extent allowed by the Township's prior approvals and Salem Township Zoning Ordinance Section 40.204.

The floor plan will identify these areas separately by labels and/or dotted lines so that the Township can identify the portion of the building allocated to the home-occupation/restoration area, the portion allocated to flower-farm and agricultural storage, and the portion allocated to personal vehicle storage.

## 2. Delineated Home-Occupation Area and 25% Limitation

The applicant understands the Township's position that any dealer-related activity operating as a home occupation must comply with Section 40.204 of the Salem Township Zoning Ordinance, including the requirement that the total floor area used by the home occupation, whether within the dwelling or within an accessory building on the same lot, shall not exceed twenty-five percent (25%) of the floor area of the dwelling unit. Salem Twp. Zoning Ordinance Section 40.204(A)(4)(a).

The dwelling is approximately 2,800 square feet. Based on that figure, the home-occupation/restoration area will not exceed approximately 700 square feet. If the Township calculates the dwelling floor area differently, the applicant will adjust the delineated home-occupation/restoration area so that it remains within the applicable 25% limitation.

The balance of the barn is not proposed as home-occupation space and will remain devoted to personal collector-vehicle storage and flower-farm/agricultural storage and equipment. Vehicles, tools, or materials located outside the delineated home-occupation/restoration area will not be used to expand the home occupation.

## 3. Agricultural and Flower-Farm Component

The property is located in the Agricultural-Residential (A-R) District. The ordinance establishes the A-R District as a Rural District intended to preserve lands suitable for long-term agricultural uses and to protect agricultural enterprises from incompatible encroachment. Salem Twp. Zoning Ordinance Section 10.203.

The ordinance also recognizes farm-products direct marketing businesses associated with an active farm operation and provides that a parcel may be used for farming and agricultural activities, including farm buildings or structures used as part of the farming operation for day-to-day operations and for storage or preservation of farm products and related materials. Salem Twp. Zoning Ordinance Sections 40.103 and 40.104.

Consistent with those provisions, a substantial portion of the proposed barn will be used for storage of flower-farm equipment, tools, materials, supplies, irrigation items, soil amendments, seasonal agricultural materials, and other items customarily associated with the flower-farm and farming operation.

## 4. Personal Collector-Vehicle Storage

A portion of the proposed barn will be used for storage of personal collector vehicles owned by the residents. These personal vehicles are not public customer vehicles, will not be displayed for sale on the premises, and will not be part of any public-facing business operation. The personal-vehicle storage area will remain separate from the delineated home-occupation/restoration area.

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

**5. Classic and Antique Vehicle Restoration; Existing Class W License**

The applicant has an existing Michigan Class W wholesale vehicle dealer license. The applicant understands that a Class W wholesaler is materially different from a retail dealership. The applicant does not conduct and is not requesting approval for a retail sales lot, vehicle showroom, public repair facility, motor vehicle service center, outdoor vehicle display area, public-facing dealership use, or public customer activity at the property.

The limited home-occupation area inside the barn is intended to be used for restoration of classic and antique motor vehicles, a use expressly identified in Section 40.204(B)(7), provided that the activity does not violate the prohibited-use provisions of Section 40.204(C). The applicant understands that distinction and will operate the home-occupation/restoration area within those boundaries.

The Class W wholesale license component remains limited to wholesale activity and related recordkeeping. Sales and disposition of vehicles will continue to occur offsite, including through licensed dealers, auctions, consignment relationships, or other lawful offsite dealer-to-dealer channels. No retail sales, customer test drives, retail customer appointments, public repair appointments, or vehicle display will occur at the property.

**6. Limited Indoor Presence of Vehicles; Not a Storage or Delivery Operation**

To address the Township's concern regarding the phrase "temporary indoor storage," the applicant clarifies that the barn is not proposed as a vehicle storage warehouse, inventory lot, storage yard, transporter terminal, vehicle depot, auction location, or general vehicle logistics operation.

Vehicles associated with the home occupation may be present indoors only when reasonably necessary for classic & antique vehicle restoration, evaluation, preservation, documentation, recordkeeping, or lawful offsite transfer in connection with the existing Class W license. Any such vehicle will be kept wholly inside the enclosed barn and within the delineated home-occupation/restoration area, except for ordinary ingress and egress.

When a vehicle does not need to be at the property for restoration, evaluation, preservation, documentation, or transfer, the applicant will use reasonable efforts to route that vehicle directly to an offsite repair facility, auction, consignment dealer, licensed dealer, or other appropriate offsite location.

**7. Prior Compliance with Township Direction Regarding Indoor Storage**

The applicant also wishes to clarify the enforcement history. The only violation notice of which the applicant is aware was promptly addressed. In connection with that matter, the applicant was instructed by Paul Montagno that vehicles associated with the dealer license needed to be stored indoors. The applicant complied with that instruction.

This revised narrative continues that indoor-only approach, but in a more defined and limited manner. The applicant is not proposing an outdoor sales lot, outdoor storage yard, exterior display area, or visible expansion of the home occupation. Instead, the revised narrative pairs indoor-only custody with specific limits on floor area, visibility, vehicle movements, public-facing activity, and restoration activities.

The applicant is not aware of any subsequent ordinance amendment or Township approval condition that forbids compliant indoor custody of occasional vehicles when such custody remains within the 25% home-occupation area, occurs wholly inside an enclosed structure, and otherwise

Page -3-

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

complies with Section 40.204. If the Township contends that a later ordinance change, written approval condition, or other authority now prohibits this indoor approach, the applicant respectfully requests that the Township identify that authority so it can be addressed directly.

## 8. Vehicle Movement and Transporter Commitments

To directly address the Township's concerns regarding traffic intensity and external evidence of the home occupation, the applicant is willing to accept the following operational limitations as conditions of zoning approval:

(a) No regular transporter schedule. Vehicle movements associated with the home occupation will be occasional and as-needed only, not regular, routine, or recurring.

(b) Daytime weekday appointments only. Any transporter event associated with the home occupation will occur only by appointment between 10:00 a.m. and 3:00 p.m. No home-occupation transporter event will occur at night.

(c) No roadway unloading or staging. Transporters will be directed to enter the driveway and complete any loading or unloading on the property. No loading, unloading, staging, or parking of transporters will occur in the Currie Road right-of-way.

(d) No unnecessary idling. Transporter activity will be limited to the time reasonably necessary to load or unload the single vehicle involved. Transporters will be instructed not to idle unnecessarily.

(e) No intensification without approval. The applicant will not increase the delineated home-occupation/restoration area, create a regular delivery schedule, add public-facing dealer activity, or otherwise intensify the home occupation without first obtaining any additional Township approval required by the ordinance.

## 9. Restoration Activities Only; No Public Repair Facility

The applicant is not requesting approval for a motor vehicle service center, repair station, public repair facility, body shop, transmission shop, welding shop, storage yard, dismantling yard, or similar prohibited home-occupation use.

Restoration activities within the delineated home-occupation/restoration area will be limited to classic/antique vehicle restoration, preservation, evaluation, documentation, and similar low-intensity work that is incidental and subordinate to the residential use of the property. Such activities may include interior/exterior cleaning, battery tender or battery charging, tire inflation, visual inspection, photographing, preservation of interior or exterior components, and similar non-public, hobby-scale restoration and preparation activities.

The applicant will not perform public repair work, engine rebuilding, transmission work, body work, painting, welding, brake work, tire mounting, dismantling, or major mechanical repairs at the property. The applicant will not accept vehicles from the general public for repair or restoration, and no customer repair appointments will occur at the property.

When outside repair or specialized work is necessary, it is contracted offsite. Major mechanical work is handled offsite through Car-Aid in Southfield; body work through Body Curve in Farmington; and transmission work through Affordable Transmissions in Livonia.

## 10. Compatibility With Home-Occupation Standards

The revised proposal is intended to comply with Section 40.204 by:

(a) keeping the home-occupation/restoration area within the 25% floor-area limitation;

Page -4-

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

(b) focusing the home-occupation component on classic and antique vehicle restoration within the limits of Section 40.204(B)(7) and Section 40.204(C);

(c) keeping the home occupation clearly incidental and subordinate to the residential use of the property;

(d) avoiding exterior display or outdoor storage associated with the home occupation;

(e) avoiding on-site retail sales, customer test drives, public repair appointments, and public-facing dealer activity;

(f) reducing and limiting any vehicle transporter movements so that they are occasional, by appointment, and not part of a regular delivery schedule;

(g) avoiding any loading, unloading, or staging within the Currie Road right-of-way;

(h) avoiding any motor-vehicle-service-center, repair-station, welding-shop, storage-yard, dismantling-yard, or public repair use; and

(i) maintaining the building placement and driveway configuration shown on the plans so that activity is set back from the roadway and compatible with the rural/agricultural character of the property.

## 11. Request for Approval

For these reasons, the applicant respectfully requests approval of the detached barn as shown on the submitted plans, subject to the operational commitments stated in this revised narrative. The applicant is willing to have these commitments incorporated into the Township's approval if doing so resolves the Township's concerns regarding restoration activity, indoor vehicle presence, and vehicle-movement intensity.

Thank you for your consideration and for the time spent discussing this project. The applicant's goal is to resolve the Township's concerns cooperatively and to operate within clear, agreed-upon boundaries.

Respectfully submitted,
THE RUBINSTEIN LAW FIRM

Dated: June 29, 2026

By: /s/

Kevin M. Burton (P86626)

Page -5-

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

# EXHIBIT "H"

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151



**SALEM TOWNSHIP**

9600 Six Mile • PO Box 75002 • Salem, Michigan 48175          Phone: 248.349.1690 • Fax: 248.349.9350

Date: July 22, 2026

**Kevin Burton**
9984 Currie Road
Northville, MI 48167

Re: Revocation of Zoning Compliance Approval for Home-Based Business

Mr. Burton,

This letter serves as formal notice that the Township is revoking the zoning compliance approval previously issued for the home-based business located at 9884 Currie Road and the municipality approval provided to the state for a Class W - Automotive Wholesaler License.

The approval was granted based on the representations that the proposed use qualified as a home-based business under Section 40.204.B.7., which permits the restoration of classic or antique motor vehicles, subject to the applicable standards of the Zoning Ordinance.

Since the approval was issued, Township staff has reviewed additional information regarding the operation of the business, including observations of the property as well as the various narratives and descriptions of the business activities that have been submitted to the Township to support the application for an accessory building that would house this use along with other uses. Based on this review, the Township has determined that the principal activity occurring on the property is not consistent with the restoration of classic or antique motor vehicles as contemplated by Section 40.204.B.7.

Rather, the information demonstrates that the business is functioning primarily as a receiving, storage, and distribution operation, involving the receipt, storage, and shipment of vehicles which may or may not be classic or antique vehicles. Such activities are not incidental to a residential home occupation and are not consistent with preserving the residential character of the surrounding neighborhood, which is a fundamental purpose of the Township's home occupation regulations.

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

While the Township can support the approval of an accessory structure to store personal vehicles, and equipment for maintaining the permitted residential and agricultural uses on the property we do not permit the current use of the property related to your automobile wholesalers license. Accordingly, the zoning compliance approval for the home-based business is hereby revoked, effective upon receipt of this letter.

You are directed to cease operation of the unauthorized business activities immediately. Continued operation of the receiving, storage, and distribution use following revocation of this approval may constitute a violation of the Township Zoning Ordinance and may result in enforcement proceedings as authorized by the Ordinance and applicable law.

If you believe this determination is based on incorrect information or wish to discuss the matter, please contact me within ten (10) days of receipt of this letter.

The Township appreciates your prompt attention to this matter and expects your cooperation in bringing the property into compliance with the Township Zoning Ordinance.

Sincerely,

John Enos, AICP
Planning and Zoning Administrator
248 349.1690

CC:    Gary Whittaker, Township Supervisor
       Anne Alexander, Building Coordinator

Doc ID: 06fa71ecdb0efd8d315967aed289cf22c15e4151

 **Dropbox** Sign                                    Audit trail

| | |
|---|---|
| **Title** | KKB v Salem Twp - Complaint and JD.pdf |
| **File name** | KKB%20v%20Salem%2...nt%20and%20JD.pdf |
| **Document ID** | 06fa71ecdb0efd8d315967aed289cf22c15e4151 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

**This document was requested from app.clio.com**

## Document History

**SENT**
**07 / 31 / 2026**
14:19:17 UTC
Sent for signature to Kevin Burton (kb@therubinsteinfirm.com) and Kaitlyn Allard (allardkaitlyn@gmail.com) by services@clio.com acting on behalf of kb@therubinsteinfirm.com
IP: 23.119.218.28

**VIEWED**
**07 / 31 / 2026**
14:19:25 UTC
Viewed by Kevin Burton (kb@therubinsteinfirm.com)
IP: 23.119.218.28

**SIGNED**
**07 / 31 / 2026**
14:19:48 UTC
Signed by Kevin Burton (kb@therubinsteinfirm.com)
IP: 23.119.218.28

**VIEWED**
**07 / 31 / 2026**
18:02:18 UTC
Viewed by Kaitlyn Allard (allardkaitlyn@gmail.com)
IP: 174.84.226.132

**SIGNED**
**07 / 31 / 2026**
18:03:26 UTC
Signed by Kaitlyn Allard (allardkaitlyn@gmail.com)
IP: 174.84.226.132

**07 / 31 / 2026**
18:03:26 UTC
The document has been completed.

Powered by **Dropbox** Sign



**Dropbox** Sign                                                                    Audit trail

| | |
|---|---|
| **Title** | KKB v Salem Twp - Complaint and JD.pdf |
| **File name** | KKB%20v%20Salem%2...nt%20and%20JD.pdf |
| **Document ID** | 06fa71ecdb0efd8d315967aed289cf22c15e4151 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

**This document was requested from app.clio.com**

**Document History**
COMPLETED

Powered by **Dropbox** Sign